**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:   (213) 401-4100
Facsimile:   (213) 401-0311

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAMUEL GARICA and SAMANTHA KOTCHER on behalf of themselves and all others similarly situated,**<br><br>                             **Plaintiffs,**<br><br>                    **v.**<br><br>**LENNY & LARRY'S, LLC**<br><br>                             **Defendant.** | **CASE NO.:** 24CV0569 DMS VET<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Samuel Garcia and Samantha Kotcher ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action against Defendant Lenny & Larry's LLC ("Lenny & Larry" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

## **INTRODUCTION**

1.      This is a proposed class action on behalf of a nationwide, California and New York class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling and sale of its "Lenny & Larry's The Boss Immunity Bars" ("Product" or "Bars").

2.      The Product's principal display panel characterizes it as an "Immunity" bar that "SUPPORTS IMMUNE HEALTH." This claim is referenced in conjunction with "BC30 Probiotic" a highly renowned proprietary probiotic made by Ganeden, a subsidiary of Kerry Group.[1] The inclusion of the BC30 Probiotic is also touted on the back label of the Product in conjunction with the following claim, "BC30 Probiotic supports immune health and protein absorption." The claim "SUPPORTS IMMUNE HEALTH" is repeated on the side-panel of the Product's packaging as well as on the front label of individual bars.

---

[1] GanedenBC30® (Bacillus coagulans GBI-30, 6086®)







3.    Although labeled, marketed, advertised and sold as an "Immunity" Bar that contains "BC30 Probiotic," "Supports Immune Health" and "Supports Protein Absorption," in truth, the Product does not contain enough BC30 Probiotic to support any of these claims, nor merits inclusion of the BC30 Probiotic logo.

4.    BC30 is a highly refined proprietary spore-forming probiotic that was designed to remain viable throughout most manufacturing processes, making it an attractive choice for the fortification of foods and beverages. Its efficacy has been widely studied – the subject of no less than 25 scientific research papers, the findings of which underly the contention that BC30 "May Help: (1) Support digestive health, (2) Support immune health and/or (3) Support protein utilization." The BC30 brand is widely recognized by consumers as promoting digestive health making it a valued addition to any product wishing to advance these claims.

5.    To make these claims, however, food products must contain a minimum of 500 million colony forming units of BC30, without which, these claims are not supported and cannot be truthfully made.

6.    Plaintiffs conducted multiple analytical tests confirming that the BC30 probiotic counts in Lenny & Larry Products fall materially short of the minimum bacterial colony forming units necessary to substantiate and truthfully assert any of the above referenced claims or include the BC30 logo on the Product label.

7.      Throughout the applicable class periods, Defendant has falsely portrayed its Product as an Immunity bar. Its failure to include certain minimum amounts of BC30 in the formulation of its Product renders claims that the Bar supports immune health and protein absorption false, misleading and deceptive. As a result of this false and misleading labeling, Defendant was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California, New York and the United States.

8.      Plaintiffs allege Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § l7500, *et. seq.,* California Civil Code § 1750, *et seq.*, N.Y. GEN. BUS. LAW § 349 et seq.,  N.Y. GEN. BUS. LAW § 350 et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

9.      Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Garcia is a resident of San Diego, California, Plaintiff Kotcher is a resident of New York, New York, and Defendant Lenny & Larry, LLC is a Delaware corporation with its principal place of business in Los Angeles, California. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

10.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and

Defendant has received substantial compensation from such transactions and business activity in this judicial district.

## **PARTIES**

11.     Plaintiff Samuel Garcia is a resident of San Diego, California.

12.     Mr. Garcia purchased Immunity Bar Products on at least three occasions in 2023 from retail locations in San Diego such as Chevron, 7-11 and Walmart.

13.     Mr. Garcia believed the representations on the Products' principal display panels – specifically that he was purchasing and receiving a product that contained viable BC30 probiotics in a sufficient amount to support "immune health" and "protein absorption."

14.     Mr. Garcia specifically purchased the Product for its probiotic content and promise that it supports "immune health" and "protein absorption."

15.     Mr. Garcia believed that Defendant lawfully marketed and sold the Product.

16.     Mr. Garcia relied on Defendant's labeling and was misled thereby.

17.     Mr. Garcia would not have purchased the Product, or would have purchased the Product on different terms had he known the truth about its contents.

18.     Mr. Garcia was injured in fact and lost money as a result of Defendant's improper conduct.

19.     If Mr. Garcia has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, he would purchase the Product in the future.

20.     Plaintiff Samantha Kotcher is a resident of New York, New York.

21.     Ms. Kotcher purchased Immunity Bars several times in the summer of 2023 from various retail markets in Manhattan and at least once at a retail location in John F. Kennedy International Airport.

22.     Ms. Kotcher believed the representations on the Product's principal display panels -- specifically that she was purchasing and receiving a product containing viable BC30 probiotics in a sufficient amount to support "immune health" and "protein absorption."

23.     Ms. Kotcher specifically purchased the Product for its probiotic content and promise that it supports "immune health" and "protein absorption."

24.     Ms. Kotcher believed that Defendant lawfully marketed and sold the Product.

25.     Ms. Kotcher relied on Defendant's labeling and was misled thereby.

26.     Ms. Kotcher would not have purchased the Product, or would have purchased the Product on different terms had she known the truth about their contents.

27.     Ms. Kotcher was injured in fact and lost money as a result of Defendant's improper conduct.

28.     If Ms. Kotcher has occasion to believe that Defendant's marketing and labeling is truthful, non-misleading, and lawful, she would purchase the Product in the future.

29.     Defendant Lenny & Larry, LLC., manufactures, markets and sells "healthful" snack alternatives in the form of cookies and bars made with plant proteins, that claim to be non-gmo, free of soy and artificial sweeteners. Among their offerings, Defendant manufactures and sells "Boss Immunity Bars" the Product at issue in this litigation. The Bars are sold across a variety of retail segments including supermarkets, convenience stores and mass merchants. Lenny & Larry, LLC is a Delaware corporation that maintains its principal place of business in Los Angeles, California.

# ALLEGATIONS

## A.    HEALTH RELATED PROBIOTIC CLAIMS ARE HIGHLY MATERIAL TO REASONABLE CONSUMERS

30.    "Probiotics are live microorganisms that are intended to have health benefits when consumed or applied to the body." [2] They are often referred to as good bacteria in the gut which compete with bad bacteria to support the body in establishing optimal digestion and aid immune function.[3]

31.    Critically, for a probiotic to be effective, it must be: (a) alive when ingested, and (b) a strain that has been clinically studied and proven to provide the particular sought after benefits. Probiotic doses are measured in terms of colony forming units ("CFUs"), which represent the number of live and active micro-organisms in one serving of a probiotic. Probiotics are identified by their specific strain, which includes the genus, the species, and the subspecies. Through this identification process specific strains can be linked with their specific effects. [4]

32.    As a result of shifting dietary preferences toward healthier foods coupled with rising consumer awareness about digestive health products, probiotics as well as food/drink with probiotic content have become increasingly popular. [5]

---

[2] *Probiotics: What You Need to Know*, National Center for Complementary and Integrative Health, U.S. Department of Health and Human Services. Available at https://www.nccih.nih.gov/health/probiotics-what-you-need-to-know (last visited March 25, 2024).

[3] *An Introduction to Probiotics, Mayo Clinic Health System*, July 13, 2022. Available at https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/an-introduction-to-probiotics (last visited March 25, 2024).

[4] Goldman, E. (Ed.), Green, L. (Ed.). (2015). *Practical Handbook of Microbiology*, Third Edition. Boca Raton: CRC Press. A colony forming unit, or CFU, is a measurement of viable microbial cells that are capable of replicating on agar plates and forming colonies which are then counted.

[5] Grand View Research, Probiotics Market Size, Share & Trends Analysis Report By Product (Food & Beverages, Dietary Supplements), By Ingredient (Bacteria, Yeast), By Distribution Channel, By End-use, By Region, And Segment Forecasts, 2023 –

33.     Most recently, "a range of factors have driven the continuing growth in demand for gut health solutions generally, and for probiotics in particular. Demographic changes such as population aging and lifestyle choices have increased the prevalence of digestive disorders, while the pandemic has accelerated the shift towards more proactive approaches to health. As a result, consumers want to see functional ingredients in their favorite food and beverage products, and they're increasingly well educated about the role of probiotics and their ability to support both digestive health and overall wellness."[6]

34.     As a result, the global market for probiotics is expected to reach $220 billion by 2030 up from an estimated 77 billion in 2022. [7]

35.     In a global survey of more than 15,000 consumers, more than 75% indicated that they were familiar with probiotics and when asked why they consume food products with probiotics, the most popular answers were to promote gut and immune health.[8] The majority said they consumed foods with probiotics to improve their intestinal tract, improve intestinal flora, and to improve their immune system.

---

2030. Available at https://www.grandviewresearch.com/industry-analysis/probiotics-market (last visited March 20, 2023).

[6] Nutra Ingredients USA, *Survey: 1 in 4 global consumers used probiotics in last six month*s, August 12, 2021. Available at https://www.nutraingredients-usa.com/Article/2021/08/12/Survey-1-in-4-global-consumers-used-probiotics-in-last-6-months (last visited March 20, 2024)

[7] Grand View Research, Probiotics Market Size To Reach $220.14 Billion By 2030, August 2023. Available at https://www.grandviewresearch.com/press-release/global-probiotics-market (last visited March 25, 2024).

[8] *How much do consumers know about probiotics in food?,* February 28, 2022, Food Navigator Europe. Available at https://www.foodnavigator.com/Article/2022/02/28/How-much-do-consumers-know-about-probiotics-in-food#:~:text=When%20asked%20how%20familiar%20respondents,were%20not%20familiar%20at%20all (last visited March 20, 2024)

The majority also said the "most preferred media for learning more is via product packaging." *Id.*

36.    Consumers would most commonly know if a product contains probiotics based on specific product labels. Indeed 75% of consumers would understand the product contained probiotics based on label claims that state the product "contains probiotics" and "supports digestive health." [9]

37.    According to a separate survey of 13,000 consumers conducted by the manufacturer of BC30, the same probiotic at issue in this litigation, the probiotic benefits of BC30 are "well recognized" by consumers. "Respondents were shown the BC30 logo and an image of products in which it can be found. When asked which benefits they perceived BC30 to deliver, 45% chose digestive health and 45% chose immune support. After being provided with more information regarding BC30, 80% found its communicated benefits to be believable." [10]

**B.    BC30 PROBIOTIC**

38.    According to its manufacturer, Ganeden, BC30™ (*Bacillus coagulans* GBI-30, 6086) is a natural, science backed probiotic ingredient used by more than 1000 product manufacturers to create functional food, beverage, and companion animal products. Backed by over 25 published papers, research shows BC30 can help support digestive health, immune health, and may support protein

---

[9]  *IFIC Survey: Consumer Insights on Gut Health and Probiotics*, April 13, 2022. Available at https://foodinsight.org/consumer-insights-on-gut-health-and-probiotics/ (last visited March 2024)

[10] Nutra Ingredients USA, *Survey: 1 in 4 global consumers used probiotics in last six month*s, August 12, 2021. Available at https://www.nutraingredients-usa.com/Article/2021/08/12/Survey-1-in-4-global-consumers-used-probiotics-in-last-6-months (last visited March 20, 2024).

absorption. With a 3-year shelf life, "BC30 delivers on building trust and consumer awareness, while providing the safe and efficacious health benefits people want most."[11]

39.    To all its down-line product manufacturers such as Lenny & Larry, Ganeden provides a BC30 Probiotic Brand Guide ("Guide") in order to ensure proper use of BC30 logo and truthful messaging of related structure-function claims.[12] The Guide provides references to a variety of scientific studies that underly the three principal benefits of BC30, specifically those related to immune health, digestive health and protein absorption.  The Guide states that, when appropriate, manufacturers using BC30 may communicate to consumers that, "Research Shows GanedenBC May Help Support Immune Health and/or "Support Protein Utilization." *Id.*  The Guide also provides minimum inclusion rates necessary to substantiate such claims.

**The research supporting GanedenBC30 is based on specific and consistent CFU[13] inclusion levels. All products making digestive health or protein utilization benefits must include 1 billion CFU per daily serving. All products making immune health or probiotic claims must include 500 million CFU per daily serving. At the very minimum, all products should include 500 million CFU for probiotic benefits even if no claims are being made.**

---

[11] *About BC30*. Available at https://bc30probiotic.com/about-us/ (last visited March 20, 2024)

[12] BC30 Probiotic Brand Guide,  https://bc30probiotic.com/wp-content/uploads/2021/02/GanedenBC30-Brand-Guidelines-February2021.pdf,(last visited March 20, 2024)

[13] "A colony forming unit, or CFU, is a measurement of viable microbial cells that are capable of replicating on agar plates and forming colonies which are then counted. *FDA Policy Regarding Quantitative Labeling of Dietary Supplements Containing Live Microbials: Guidance for Industry*. Available at https://www.fda.gov/media/115730/download (last visited March 20, 2024).

40.    The BC30 Product Guide makes the following clear:

a. References to BC30's effect on the structure/function of the human body (*e.g.,* immune health or protein absorption) are conditional (*i.e., **May** Help Support*) as opposed to definitive (*i.e., **Supports***);

b. The minimum threshold CFU necessary to make a Protein Absorption Claim is **1 Billion CFU**;

c. The minimum threshold CFU necessary to make an Immune Health claim is **500 Million CFU**;

d. The minimum threshold CFU necessary for any product touting the inclusion of BC30, even in the absence of other claims, is **500 Million CFU**.

**C.    PLAINTIFFS' ANALYTICAL TESTING REVEAL THAT PRODUCTS DO NOT CONTAIN SUFFICIENT AMOUNTS OF BC30 TO SUPPORT EITHER STRUCTURE FUNCTION CLAIM, NOR MEET THE MINIMUM EFFICACY REQUIREMENTS TO ADVERTISE INCLUSION OF BC30 IN THE PRODUCT AS ESTABLISHED BY THE MANUFACTURER**

41.    Plaintiffs conducted analytical tests on multiple samples of multiple lots of Lenny & Larry Products, the results of which indicate that the amount of BC30 in the Products are consistently and materially below 500 million CFU, rendering the label claims "Supports Immune Health" and "Supports Protein Absorption," false and misleading. The failure to include a minimum of 500 million CFU also fails the manufacture's minimum requirement to make any kind of BC30 representation at all, further rendering Defendant's label false, misleading and deceptive.[14]

---

[14] Testing was conducted on multiple lots. Each test was conducted in compliance with 21 C.F.R. §101.9 (g)(2) and the Guide. In each instance the BC30 CFU count was below 200 million CFU. Per the BC30 Manufacturer Guide, "[a]ll products must be 3rd party tested to ensure appropriate viability. This can be performed by the customer using the GanedenBC30 enumeration protocol as published in the USP FCC or via a validated third party lab."

### D.    THE FEDERAL FOOD DRUG & COSMETIC ACT AND CALIFORNIA'S SHERMAN FOOD, DRUG AND COSMETIC LAW

42.    The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of food and Products to the consuming public.  21 U.S.C §301.  It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions.

43.    Fundamental to its core purpose – the FDCA broadly prohibits the misbranding or adulteration of any food.  Generally, a food is misbranded if, among other things, its labeling is false or misleading.  21 U.S.C. §343(a)(1). [15]  Moreover, a food is adulterated if any valuable constituent has been in whole or in part omitted or abstracted therefrom. 21 U.S.C. §342(b)(1).

44.    California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), which adopts the FDCA in its entirety (§110065), identically provides that, "[a]ny food is misbranded if its labeling is false or misleading in any particular" (§110660) and that "any food is adulterated if any valuable constituent has been in whole or in part omitted or abstracted therefrom (§110585(a)).  California Health & Safety Code, Division 104, Part 5.

45.    As detailed above, Lenny & Larry's failure to include sufficient amounts of BC30 in their Product while making claims about immune health and protein absorption renders the Product misbranded and adulterated under the FDCA and Sherman Law, and independently gives rise to the state law causes of action alleged herein.

---

[15] California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), which adopts the FDCA in its entirety, identically provides that, "[a]ny food is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code, Article 6, §110660.

46.     Not only has Defendant violated the clear letter of the FDCA and Sherman Law, but it has separately acted to deceive and mislead consumers into purchasing products with qualities and attributes that they simply did not have in violation of the state laws alleged herein.

## ECONOMIC INJURY

47.     Plaintiffs sought to buy products that were lawfully labeled, marketed and sold.

48.     Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

49.     Plaintiffs believed that the Products purchased contained enough BC30 Probiotics to support the basic efficacy claim along with the structure-function claims made on the Product's packaging – "Supports Immune Health" and "Supports Protein Absorption."

50.     Plaintiffs believed that the Products were lawfully marketed and sold.

51.     Plaintiffs received Products that were unlawfully marketed and sold.

52.     In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiffs paid a price premium.

53.     As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that lacked the promised ingredients which they reasonably believed they contained.

54.     Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

55.     Defendant knows that the inclusion of probiotics in general, and BC30 in specific, are material to consumers' purchasing decisions.

56.    Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

57.    By engaging in the false and deceptive conduct alleged herein Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

58.    Plaintiffs, however, would be willing to purchase Lenny & Larry Products again in the future should they be able to rely on Defendant's marketing as truthful and non-deceptive.

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

    a.  **National**: All persons in the United States who purchased Class Products in the United States during the Class Period.

    b.  **California:** All persons in California who purchased the Class Products in California during the Class Period.

    c.  **New York:** All persons in New York who purchased the Class Products in New York during the Class Period.

    d.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

60.    Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

61.    Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

62.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

63.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

64.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a.    Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

b.    Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

c.    Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.    Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e.    Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. (the "UCL");

f.    Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL");

g.    Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*. (the "CLRA");

h.    Whether Defendant's actions violate N.Y. GEN. BUS. LAW § 349 et seq;

i.    Whether Defendant's actions violate N.Y. GEN. BUS. LAW § 350 et seq;

j.    Whether Defendant should be enjoined from continuing the above-described practices;

k.    Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

l.    Whether Defendant should be required to make restitution,

disgorge profits, reimburse losses, and pay damages as a

result of the above-described practices.

65.    Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were  consumers who purchased Defendant's Products. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

66.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

67.    A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

68.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

69.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable

to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty)

70.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

71.    Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607 and Cal. Com. Code §2313. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

72.    Defendant made express warranties to Plaintiffs and members of the Class that the Products they purchased contained BC30 in an amount sufficient to: (1) meet minimum efficacy standards per the manufacturer's requirements; (2) truthfully represent that the Product "supports immune health;" (3) truthfully represent that the Product "supports protein absorption;" and (4) truthfully represent that the Product is an Immunity bar.

73.    The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

74.    Plaintiffs and the Class purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

75.    Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

76.    Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the

advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiffs and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

77.    Plaintiffs and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

### SECOND CAUSE OF ACTION
**("Unlawful" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq*.)**
**By Plaintiff Garcia on Behalf of the California Subclass**

78.    Plaintiff Garcia incorporates each and every allegation contained in the paragraphs above as if restated herein.

79.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

80.    A business act or practice is "unlawful" if it violates any established state or federal law.

81.    Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

>    a.    21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b. 21 U.S.C. §342(b)(1), which deems a food adulterated if any valuable constituent has been in whole or in part omitted or abstracted therefrom.

c. 21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

82.    California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §109875 *et seq*., broadly prohibits the misbranding of food. Cal. Health & Safety Code §110765; *See, also* Cal. Health & Safety Code §110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). Cal. Health & Safety Code §110585(a)("any food is adulterated if any valuable constituent has been in whole or in part omitted or abstracted therefrom).

83.    The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938  as the food labeling regulations of California. Cal. Health & Safety Code §110665.

84.    As described in detail above, by failing to label the Products in a manner that accurately represents its contents, Defendant generally violates 21 U.S.C. §343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") and Cal. Health & Safety Code §110585(a)("any food is adulterated if any valuable constituent has been in whole or in part omitted or abstracted therefrom) as incorporated by California's Sherman Law. Independently, by mislabeling the Products, Defendant violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

85.    Defendant violated and continues to violate the Sherman Law and therefore continues to violate the "unlawful" prong of the UCL through the false labeling of its Product.

86.    Defendant's identical conduct that violates the Sherman Law, also violates FDCA §403(a)(1), 21 U.S.C. §343(a)(1), which declares food misbranded under federal

law if its "labeling is false and misleading in any particular" and 21 U.S.C. §342(b)(1), which deems a food adulterated "if any valuable constituent has been in whole or in part omitted or abstracted therefrom." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA.

87.    By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

88.    Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### THIRD CAUSE OF ACTION
**("Unfair" Business Practices in Violation of
The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)
By Plaintiff Garcia on Behalf of the California Subclass**

89.    Plaintiff Garcia incorporates each and every allegation contained in the paragraphs above as if restated herein.

90.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

91.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

92.    Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant had engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq*.

93.    Through its unfair acts and practices, Defendant obtained, and continued to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant had made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FOURTH CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)**
**By Plaintiff Garcia on Behalf of the California Subclass**

94.    Plaintiff Garcia incorporates each and every allegation contained in the paragraphs above as if restated herein.

95.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

96.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

97.    Defendant's acts and practices of mislabeling its Products in a manner to suggest they principally contained their characterizing ingredients.

98.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiff and the Class from the purchases of their Products.

99.    Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FIFTH CAUSE OF ACTION
**(False Advertising in Violation of
California Business & Professions Code §§ 17500, *et seq.*)
By Plaintiff Garcia on Behalf of the California Subclass**

100.    Plaintiff Garcia incorporates each and every allegation contained in the paragraphs above as if restated herein.

101.    Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

102.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

103.    The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

104.    Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq*., as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

105.    Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**<u>SIXTH CAUSE OF ACTION</u>**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq*.)**
**By Plaintiff Garcia on Behalf of the California Subclass**

106.    Plaintiff Garcia incorporates each and every allegation contained in the paragraphs above as if restated herein.

107.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

108.   Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

109.   The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

110.   Defendant has violated, and continues to violate, the CLRA in at least the following respects:

    a.   §1770(5)   pertaining   to   misrepresentations   regarding   the characteristics   of   goods   sold—specifying   that   misleading representations regarding ingredients violate the CLRA;

    b.   §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

    c.   § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

111.   Defendant knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

112.   The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

113.   Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

114.   Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

115.   Plaintiff served a CLRA demand pursuant to Civil Code §1782, via U.S. Certified Mail Return Receipt notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. The demand was received by Defendant on January 22, 2024. More than thirty days have since elapsed without Defendant providing the requested relief thereby enabling Plaintiff to properly seek damages as provided under Civil Code §1780.

116.   Pursuant to Civil Code § 1780(a), Plaintiff and members of the class seek compensatory damages, punitive damages, restitution, disgorgement of profits, and an order enjoining Defendant from deceptively marketing the Products.

## SEVENTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 *et seq.*)**
**By Plaintiff Kotcher on behalf of the New York Subclass**

117.   Plaintiff Kotcher incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Kotcher brings this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq*.

118.   Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 349(a).

119.   Lenny & Larry's labeling and marketing of the Products, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff

Kotcher and the New York Subclass as to the characteristics and value of the Products.

120.   Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. GEN. BUS. LAW § 349(h).

121.  In accordance with subsection (h) of Section 349, Plaintiff Kotcher seeks an order enjoining Lenny & Larry from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, Lenny & Larry will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members. As a consequence of Lenny & Larry's deceptive acts and practices, Plaintiff Kotcher and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Kotcher and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

### EIGTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350 *et seq.*)**
**By Plaintiff Kotcher on Behalf of the New York Subclass**

122.   Plaintiff Kotcher incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Kotcher brings this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350.

123.   Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. GEN. BUS. LAW § 350.

*124.*   New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. GEN. BUS. LAW § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

125.   Lenny & Larry's labeling, marketing, and advertising of its Bar, as alleged herein, is "misleading in a material respect" and, thus, constitutes "false advertising," as it falsely represents the Products as consisting of characteristics and lawfulness that they do not possess.

126.   Plaintiff Kotcher seeks an order enjoining Lenny & Larry from continuing this false advertising. Absent enjoining this false advertising, Lenny & Larry will continue to mislead Plaintiff Kotcher and the other members of the New York Subclass as to the characteristics of its Products, and in doing so, irreparably harm each of the New York Subclass members.

127.   As a direct and proximate result of Lenny & Larry's violation of New York General Business Law §350, Plaintiff Kotcher and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Kotcher and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

## NINTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)
### By Plaintiffs on Behalf of the Nationwide Class

128.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

129.   Defendant's conduct in enticing Plaintiffs and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

130.    Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.

131.  It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

132.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

# **PRAYER FOR RELIEF**

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B.     Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.     Compensatory damages for Causes of Action for which they are available.

D.     Other statutory penalties for Causes of Action for which they are available.

E.     Punitive Damages for Causes of Action for which they are available.

F.     A declaration and Order enjoining Defendant from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G.     An Order awarding Plaintiffs8 their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.     An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.     Such other and further relief as may be deemed necessary or appropriate.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

# **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

DATED: March 25, 2024                    Respectfully submitted,


Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:  (213) 401-4100
Facsimile:   (213) 401-0311
Email:  mdb@kuzykclassactions.com

*Counsel for Plaintiffs*